UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Constance Hines and Marshay Hines,

                                        Plaintiffs,

        -v.-                                                1:06-CV-01517
                                                            (NPM)

The City of Albany; The Albany Police
Department; James W. Tuffey, Albany
Chief of Police; and Officers John Doe
1 through 5,

                                        Defendants.

APPEARANCES:                            OF COUNSEL:

COOPER ERVING & SAVAGE LLP              PHILLIP G. STECK
Attorneys for Plaintiffs
39 North Pearl Street
4th Floor
Albany, NY 12207

OFFICE OF THOMAS MARCELLE               THOMAS MARCELLE
Attorney for Plaintiffs
2 E-Comm Square
3rd Floor
Albany, NY 12207

REHFUSS, LIGUORI &                      STEPHEN J. REHFUSS
ASSOCIATES, P.C.
Attorneys for The City of Albany; The
Albany Police Department; and James W.
Tuffey, Albany Chief of Police
40 British American Blvd.
Latham, NY 12110

Officers John Doe 1 through 5                    NO APPEARANCE[1]


Neal P. McCurn, Senior District Judge


### MEMORANDUM, DECISION AND ORDER


## I.      Introduction

Plaintiffs Constance and Marshay Hines ("Plaintiffs") bring this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants, the City of Albany ("the City"), the Albany Police Department ("the Police Department"), the Albany Chief of Police, James W. Tuffey ("Tuffey"), and five unidentified officers named John Doe 1 through 5 ("the Officers"), violated rights guaranteed them by the Fourth, Fifth and Fourteenth Amendments.  Presently before the court is a motion to dismiss the entire complaint by defendants City, Police Department and Tuffey ("Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs oppose, and Defendants reply.  Oral argument was heard regarding the pending motion on November 7, 2007 in Syracuse, New York.  Decision was reserved.  Thereafter, Plaintiffs filed a motion to amend the complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.  Defendants oppose.  Decision on the Rule 15 motion is made on the papers submitted without oral argument.  Because resolution of the Rule 15 motion will affect the court's analysis of the Rule 12(b)(6) motion, the court will address the motion to amend at the outset.

## II.     Rule 15(a) Motion to Amend

_____

[1] At the time the motion to dismiss was filed, defendants, Officers John Doe 1-5, had not been identified or served, and therefore, no appearance has been made on their behalf.

1

Plaintiffs filed their motion to amend the complaint after Defendants filed their answer.  Accordingly, Plaintiffs are not entitled to amend the complaint as a matter of right, but instead must receive leave of the court pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  See FED. R. CIV. P. 15(a)(2).  Rule 15 provides that leave of the court to amend a pleading "shall be freely given when justice so requires."  Id.  However, the court has discretion to deny a motion to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007), citing Forman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962)).  Here, Defendants argue that Plaintiffs' proposed amendment of the complaint would result in undue delay and undue prejudice to Defendants, and that it would be futile.

## A.     *Undue Delay and Prejudice*

Initially it should be noted that absent a showing of bad faith or undue prejudice, mere delay may not provide the sole basis to deny a motion to amend.  See Twisted Records, Inc. v. Rauhofer, No. 03-CV-2644, 2005 WL 517328, at *6 (S.D.N.Y. Mar. 3, 2005) (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)) (internal quotation omitted).  In order to decide whether a proposed amendment of a pleading will cause undue prejudice to the opposing party, courts will generally consider whether the amendment would

> (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.

Twisted Records, 2005 WL 517328, at *6 (quoting Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 284 (2d Cir.2000) (quoting Block, 988 F.2d at 350)).  Typically, the first two considerations are given more emphasis.  See

2

Twisted Records, 2005 WL 517328, at *6 (citing E.E.O.C. v. Morgan Stanley & Co., Inc., 211 F.R.D. 225, 227 (S.D.N.Y.2002); Tokio Marine & Fire Ins. Co. Ltd. v. Employers Ins. of Wausau, 786 F.2d 101, 103 (2d Cir.1986)).

Here, Plaintiffs propose to amend their complaint with further allegations in support of their Monell claim.[2]  In addition, the Albany Police Department has been eliminated as a defendant in the proposed amended complaint.[3]  In opposition to the motion to amend, Defendants argue that they would be prejudiced because the additional information contained in the proposed amended complaint was available to Plaintiffs at the time the original complaint was filed. Defendants further argue that amending the complaint at this stage would delay this court's decision on the pending motion to dismiss.  Because of the procedural posture of this case, granting Plaintiffs' motion to amend their complaint will not require Defendants to expend additional resources to conduct discovery or prepare for trial, nor will it significantly delay resolution of the pending motion to dismiss, notwithstanding Defendants' argument to the contrary.  Accordingly, the court finds that amendment of the complaint will not result in delay or undue prejudice to Defendants.  Nonetheless, Plaintiffs' motion to amend may still be denied if Defendants successfully establish that amendment of the complaint would be futile.

### B.    Futility

"[I]t is well established that leave to amend a [pleading] need not be granted when amendment would be futile."  Savitzky v. Mazzella, 210 Fed. Appx.

---

[2]  See Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2037-38 (1978).

[3]  Defendants do not oppose the proposed amendment in this regard.  Accordingly, Plaintiffs' motion to amend their complaint to remove the Albany Police Department as a defendant is granted.

71, 72, 2006 WL 3826703 (2d Cir. Dec. 21, 2006) (quoting Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003)). See also Forman, 371 U.S. at 182. It is axiomatic that the party opposing an amendment has the burden of establishing that leave to amend would be futile. Staskowski v. County of Nassau, No. 05-CV-5984, 2007 WL 4198341, at *4 (E.D.N.Y. Nov. 21, 2007). Where no colorable grounds exist to support a claim or defense, a motion to amend will be denied on the basis of futility. See Estate of Ratcliffe v. Pradera Realty Co., No. 05-CV-10272, 2007 WL 3084977, at *4 (S.D.N.Y. Oct. 19, 2007) (citing Barrett v. United States Banknote Corp., 806 F.Supp.1094, 1098 (S.D.N.Y. 1992). On the other hand, if the movant has colorable grounds to support its claim or defense, justice requires that leave to amend be granted. See Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 783 (2d Cir. 1984). Said "colorable grounds" requirement mandates that a district court may not deny a motion for leave to amend a pleading when said pleading is sufficient to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which is to say, that colorable grounds exist. See Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 244 (2d Cir. 2007); Ratcliffe, 2007 WL 3084977, at *4. Therefore, the futility analysis of Plaintiffs' motion to amend mirrors the analysis of Defendants' Rule 12(b)(6) motion to dismiss. To be sure, the only proposed amendments which are opposed by Defendants concern Plaintiffs' Monell claims. Accordingly, the court will concurrently decide Plaintiffs' motion to amend the complaint and Defendants' motion to dismiss.

### III.    Rule 12(b)(6) Motion to Dismiss

####     A.    Procedural Background

Plaintiffs commenced this action on December 19, 2006, alleging that (1) Defendants, in their individual and official capacities, violated Plaintiffs' right to

be free from unreasonable search and seizure, guaranteed under the Fourth and Fourteenth Amendments, when they detained Plaintiffs for eight hours on April 29, 2006; and (2) Defendants, in their individual and official capacities, violated Constance Hines' right to be free from the deprivation of her property without due process of law, guaranteed her under the Fourth, Fifth and Fourteenth Amendments, when they seized her Cadillac Escalade and failed to provide her with a post-deprivation hearing.

Defendants argue that Plaintiffs' first claim for unlawful search and seizure should be dismissed because the Officers are entitled to qualified immunity. As to Constance Hines' illegal seizure and due process claim, Defendants argue that first, they are not the proper defendants, and in any event, the claim is not ripe. Defendants also argue that Plaintiffs have failed to state a claim against them under Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2037-38 (1978), and that they have failed to allege any personal involvement on behalf of Tuffey in order to state a claim against him.

After oral argument was heard on the motion to dismiss, Plaintiffs filed a motion to amend their complaint to remove the Albany Police Department as a defendant and to set forth further allegations in support of their Monell claims. For the reasons stated at 4 *supra*, the motion to amend will be decided concurrently with the motion to dismiss. Said motions will therefore be decided considering the allegations in the complaint as well as allegations which appear in the proposed amended complaint, where appropriate. Because, in all respects relevant to the court's analysis, Plaintiffs have supplemented their allegations by their proposed amended complaint, the court will only cite the source of an allegation where it appears in the proposed amended complaint.

### **B.     Factual Background**

5

As will become apparent, Defendants rely on facts outside of the complaint in support of their arguments for dismissal of the claims therein.  Therefore, it is important to emphasize that for purposes of deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court will, as it must, accept the following allegations of fact in the complaint as true, drawing all reasonable inferences in Plaintiffs' favor.  World Religious Relief, Inc. v. Sirius Satellite Radio, Inc., No. 05-CV-8257, 2007 WL 2261549, at *1 (S.D.N.Y. Aug. 7, 2007) (quoting Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.1994)) (emphasis added).

Plaintiffs allege that at 6 a.m. on a Saturday morning in April 2006, Albany Police ("Officers" or "Police") forcibly entered the home of Constance Hines, without warning, through both the front and back doors.  Present at the time were Constance, her son, Prince, and her daughter, Marshay.  All three occupants were awakened when the Officers, at least five in number, entered the home.  Each of the occupants were immediately handcuffed while the Police searched the home.  While Marshay was handcuffed, she was brought to the ground, which caused pain to her dislocated shoulder.  This injury, which was caused by the Police, required medical attention and physical therapy.

During the search of the home, Constance and Marshay ("Plaintiffs") were held, still handcuffed, in the living room on the first floor, where they were guarded by one or two of the Officers.  Despite repeated inquiries by Constance as to whether the Police had a warrant to search her home, the Officers refused to answer her and no warrant was ever produced.  At some point after Plaintiffs were in the living room, Prince was brought there, handcuffed.  Prince produced the keys to Marshay's vehicle when the Police asked for the keys to his car.  Even though Marshay's vehicle was the car Prince typically drove, the Police instead asked for the keys to the Cadillac Escalade, which belonged to Constance.

Constance informed the Police that the Escalade belonged to her, but certain Officers nonetheless took the keys, and drove away in said car, doing so without a warrant.  Thereafter, Prince was escorted from the home and into a police car.

The handcuffs were eventually removed from Plaintiffs about an hour after Police initially entered and searched the home.  Two Officers remained in the home to guard Plaintiffs, who were restricted from movement beyond the living room couch, and were prevented from using the telephone.  The Officers were informed that Constance was expected at work, and that Marshay was expected to coach a girls basketball team.  Nonetheless, the Officers refused to let Constance call or go to her workplace, and refused to allow Marshay to leave in order to meet her coaching obligation.  Further, Plaintiffs were prevented from using the bathroom without escort from a male officer, and only then if the bathroom door remained open.  Despite requests for an explanation as to the necessity for these restrictions, none was ever given.

At some point, Prince's dog had soiled its cage, and because Plaintiffs were not allowed to clean the cage, the smell of dog feces sickened the Officers, causing them to move Plaintiffs outside to the front porch in full view of Plaintiffs' neighbors.  Also at some point, approximately six hours into the detention of Plaintiffs, the other Officers who were present at the initial entry into the home returned and commenced a search of the house.  The Officers ransacked the house, removing a safe from Constance's first floor bedroom which contained her jewelry.  One of the Officers removed the safe from the house, placed it in a police car, and drove away with it.  No warrant was ever produced, despite a request to do so by Plaintiffs.

At approximately 2 p.m., after the safe and Escalade were taken, the Officers left the house, and Constance was allowed to make telephone calls or

7

leave the premises if she desired.  During the entire eight-hour detention, the Officers refused to allow Plaintiffs to eat or drink.  As a result of the detention, Constance missed work, and Marshay lost her coaching job.

Despite repeated requests by Constance for the return of her truck after it was seized in April 2006, the City did not return the vehicle until July 2007.  At no time did the Defendants provide Constance with a hearing.  Constance continued to pay the insurance on the vehicle while it was in the City's possession for over one year.

Plaintiffs allege that their seizure and detention and the seizure of Constance's vehicle were without cause or warrant and not pursuant to a judicial order.  Plaintiffs further allege that

> [A]ll of defendants' actions were the result of the customs, practices, and policies of the City of Albany, the Albany Police Department, and Chief Tuffey, or in the alternative, resulted from the failure of [the City], [the Police Department], and [Tuffey] to properly train the officers under their direction in the appropriate procedures for executing arrest and/or search warrants.

Compl. ¶ 57.

## C.    Discussion

### 1.    Rule 12(b)(6) Standard

As previously mentioned, when deciding a Rule 12(b)(6) motion to dismiss, the court must accept the allegations of fact in the complaint as true, drawing all reasonable inferences in plaintiffs' favor.  See *supra*, at 6. Additionally, when deciding such a motion, the court may **only** consider "the factual allegations in the complaint, [. . .] documents attached to the complaint as exhibits or incorporated by reference, [. . .] matters of which judicial notice might be taken, and [. . .] documents either in plaintiff[s'] possession or of which

plaintiffs had knowledge and relied on in bringing suit." <u>Muller-Paisner v. TIAA</u>, 446 F.Supp.2d 221, 226-227 (S.D.N.Y. 2006) (<u>citing</u> <u>Brass v. American Film Technologies, Inc.</u>, 987 F.2d 142, 150 (2d Cir.1993) (internal citations omitted)) (emphasis added).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the complaint includes "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007).[4]  The Court of Appeals for the Second Circuit has recently interpreted the foregoing language to require that lower courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*[,]" but does not require a heightened pleading standard for civil rights claims.  <u>Iqbal v. Hasty</u>, 490.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

### 2.    *Monell Claim and Claims Against Tuffey Personally*

#### a.    *Claims Against Chief Tuffey in His Official Capacity Are Dismissed*

Initially, it should be noted that counsel for Plaintiffs stated on the record at oral argument that the claims against defendants Police Department and Tuffey, in his official capacity, are withdrawn.  While Plaintiffs amend their complaint to remove the Police Department as a defendant, claims against Tuffey in his official capacity remain in the proposed amended complaint.  Accordingly, the court is

---

[4] By its opinion in <u>Bell Atlantic</u>, the Supreme Court recently abrogated the often-cited language of <u>Conley v. Gibson</u> "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S.Ct. 1955, 1968 (2007) (<u>quoting</u> <u>Conley</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).  In so doing, the Court found that <u>Conley</u> "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  <u>Id.</u>, at 1969.

constrained to address those claims here.

Although Defendants fail to raise the issue in support of their motion to dismiss, because the Police Department is an administrative arm of the City, which is a municipality, the Police Department "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." Leland v. Moran, 100 F.Supp.2d 140, 145 (N.D.N.Y. 2000) (internal quotation omitted). See also Clayton v. City of Kingston, 44 F.Supp.2d 177, 183 (N.D.N.Y. 1999).  Moreover, because claims against a government employee in his official capacity are treated as a claim against the municipality, see Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct.358 (1991), Chief Tuffey is also considered an arm of the City, and therefore cannot be sued in that capacity. Accordingly, at oral argument the court voiced its intent to dismiss on this ground, *sua sponte*,  all claims against the Police Department and Chief Tuffey in his official capacity.  The court understood counsel for Plaintiff to verbally withdraw said claims.  To the extent Plaintiffs intend to pursue claims against Tuffey in his official capacity, as said claims remain in the proposed amended complaint, those claims are dismissed.

### *b.      Monell Claims*

In order to state a claim pursuant to 42 U.S.C. § 1983 , a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state ... law." Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980) (internal quotations omitted)).  "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (quoting Baker v. McCollan, 443 U.S.

10

137, 144 n.3, 99 S.Ct. 2689 (1979)).

A municipal entity, such as the City here, may not liable pursuant to § 1983 under the theory of *respondeat superior*, but may be liable where its employee acted pursuant to an official policy, custom, or practice of said entity. See Monell, 436 U.S. at 694-95, 98 S.Ct. at 2037-38; Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990). Such a policy, custom or practice may "be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Patterson, 375 F.3d at 226 (quoting Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996)) (internal quotation marks omitted). Also, "[a]ctions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim." Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292 (1986)). Where such an individual is "responsible for establishing final governmental policy[,]" municipal liability will attach. See id. (quoting Pembaur, 475 U.S. at 483, 106 S.Ct. 1292).[5]

Defendants argue that Plaintiffs failed to specifically allege that the Officers acted according to an actual policy, practice or custom of the City that deprived Plaintiffs of their constitutional rights, and therefore, the Monell claim must be dismissed. In support of their argument, Defendants cite caselaw for the proposition that "complaints alleging § 1983 violations must contain specific allegations of fact which indicate a deprivation of constitutional rights;

---

[5] The Court of Appeals for the Second Circuit has applied the Pembaur standard to mean that "[w]here an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy. An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." Anthony, 339 F.3d at 139 (quoting Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983).

11

allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." <u>Humpherys v. Nager</u>, 962 F.Supp. 347, 351 (E.D.N.Y. 1997) (<u>quoting</u> <u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883, 887 (2d Cir. 1987)).  However, the cited case relies on a Second Circuit opinion which preceded <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 113 S.Ct. 1160 (1993) – wherein the Supreme Court, while reviewing a decision on a motion to dismiss, granted certiorari in order to resolve a split among circuits as to whether a heightened pleading standard should be applied to § 1983 actions alleging claims for municipal liability under <u>Monell</u>.  There the Court rejected the Fifth Circuit holding which answered that question in the affirmative, and held, in accordance with <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S.Ct. 99 (1957) that under Rule 8, all that is required is "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Leatherman</u>, 507 U.S. at 168, 113 S.Ct. at 1163 (<u>quoting</u> <u>Conley</u>, 355 U.S. at 47, 78 S.Ct. at 103) (internal quotations omitted).[6]  The Second Circuit has evolved from its requirement that "a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights[,]" <u>Alfaro Motors</u>, 814 F.2d at 887, to the post <u>Leatherman</u> conclusion that "the court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference.  Whether the plaintiff can produce evidence to create a genuine issue with regard to his allegation is to be resolved through a motion for summary judgment[,]" <u>Phelps v.</u>

---

[6] Abrogated on other grounds by <u>Bell Atlantic v. Twombly</u>, — U.S. —, 127 S.Ct. 1955 2007).  To be sure, the Court in <u>Bell Atlantic</u>, while rejecting <u>Conley</u>'s "no set of facts" language, nonetheless favorably cited the "fair notice" language cited here.  <u>See</u> 127 S.Ct. at 1964.

Kapnolas, 308 F.3d 180, 186-87 (2d Cir. 2002).  To be sure, Phelps dealt with an Eight Amendment claim against prison officials for deliberate indifference, not a Monell claim.  In Phelps, the court found that the mere allegation of an official's knowledge of a substantial risk to the plaintiff's safety was enough to set forth the subjective element of said claim.  See id. at 186.  However, it is clear from the language of that opinion that a plaintiff need not plead facts to support allegations of constitutional violations beyond what is required by Rule 8.  See id.  See also Hernandez v. Goord, 312 F.Supp.2d 537, 544-45 (S.D.N.Y. 2004).  Regarding Monell claims in particular, "[t]he pleading requirement for a § 1983 claim against a municipality will be met if a plaintiff alleges that 'a formal policy which is officially endorsed by the municipality' caused the plaintiff's injuries."  Perez v. Westchester County Dep't of Corrs., No. 05-Civ.-8120, 2007 WL 1288579, at *5 (S.D.N.Y. Apr. 30, 2007) (quoting Moray v. City of Yonkers, 924 F.Supp. 8, 12 S.D.N.Y. (1996) (citing Monell, 436 U.S. at 690))).

Arguably, the allegations in the original complaint regarding policy or custom are conclusory.  In fact, Plaintiffs merely allege that "[a]ll of defendants' actions were the result of the customs, practices, and policies of the City of Albany, the Albany Police Department, and Chief Tuffey, or in the alternative, resulted from the failure of the City of Albany, Albany Police Department, and Chief Tuffey to properly train the officers under their direction in the appropriate procedures for executing arrest and/or search warrants."  Compl. ¶ 57.  See also Proposed Am. Compl. ¶ 56.

Plaintiffs' proposed amended complaint, however, elaborates further.  First, Plaintiffs allege that Tuffey is an official policy maker for the City and that all of the alleged actions of the Officers were undertaken with Tuffey's knowledge and consent or were subsequently ratified by him.  See id. ¶¶ 57-58.  In addition,

Plaintiffs allege that it is the policy of the City both to seize persons without probable cause pending the application of a search warrant and to seize property without probable cause and without a warrant during a drug raid, and that the actions of the Officers in this case were done pursuant to said policies.  See id. ¶¶ 61-62, 74-75.  Alternatively, Plaintiffs allege, the actions of the Officers in this case were the result of the City's failure to train regarding proper procedures for the seizure of innocent persons or their vehicles during the execution of an arrest warrant, and said failure to train resulted in deliberate indifference to the constitutional rights of the Plaintiffs.  See id. ¶¶ 64-65, 80-81.  Plaintiffs also claim that it is the City's policy to not provide a hearing to the owner of property seized by the Police Department in order to determine if said property should be lawfully returned or retained, and that the actions of the Police Department in seizing and retaining Constance's vehicle without a hearing were done pursuant to said policy.  See id. ¶¶ 77-78.  Further, Plaintiffs allege that "Chief [Tuffey] was aware of the procedures used in this case to seize plaintiffs' persons and property; and . . .  [he] approved of and authorized and ratified the same."  Id. ¶ 79.

Plaintiffs also refer to correspondence between the City and the New York State Attorney General's Office as well as correspondence between Plaintiffs and Tuffey to support their claim that Tuffey was responsible for the arrests and the seizure of the vehicle.  See id. ¶ 79.  See also Ex. A-C of Aff. of Tom Marcelle, July 20, 2007, Dkt. No. 14 ("Marcelle Aff.").  These letters were previously submitted by Plaintiffs in opposition to Defendants' motion to dismiss, specifically to contradict Defendants' argument that they are not the proper defendants to the due process and illegal seizure claim because they were not in

14

possession of the vehicle.[7]  The first letter, dated August 2, 2006, is addressed to Tuffey by Plaintiffs' attorney, and requests the immediate return of the Escalade. See Marcelle Aff., Ex. A.  The second letter is Tuffey's reply, dated September 6, 2006, wherein he states that the vehicle is in the possession of the Albany Police Department, but is being held by that department, along with the New York State Attorney General's Organized Crime Task Force, regarding an ongoing narcotics investigation, and that Plaintiffs' attorney will be notified when the investigation is complete.  See Ex. B, to Marcelle Aff.  The final letter is addressed to the Property Clerk of the Albany Police Department, and is written by Robert J. Lee, Assistant Deputy Attorney General for the State of New York.  See Ex. C to Marcelle Aff.  Said letter, dated July 10, 2007, indicates that the vehicle, which was seized by the Albany Police Department in connection with a criminal investigation conducted by that department and the State Attorney General's office, is no longer needed as evidence and can be returned to its owner.  See id.

Even where allegations in the complaint of the existence of an official policy are not buttressed by supporting facts, dismissal is not warranted as long as the defendant has "fair notice of what the plaintiff's claim is and the grounds upon which it rests[,]" Nesbitt v. County of Nassau, No. 05-CV-5513, 2006 WL 3511377, at *4 (E.D.N.Y. Dec. 6, 2006) (quoting Conley, 355 U.S. at 474, 78 S.Ct. 99).  "It is up to the 'liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'" Id. (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992 (2002) and citing Leatherman, 507 U.S. at 168-69).  Clearly, the aforementioned

---

[7] While normally the letters could not be considered by the court in deciding a Rule 12(b)(6) motion, because they are "documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit[,]" Muller-Paisner v. TIAA, 446 F.Supp.2d 221, 226-227 (S.D.N.Y. 2006), they are properly considered.

allegations in Plaintiffs' proposed amended complaint provide enough facts to give Defendants fair notice of their <u>Monell</u> claims.  Accordingly, Defendants' Rule 12(b)(6) motion to dismiss said claims is denied, thereby rendering the proposed amendments to Plaintiffs' complaint not futile.  Consequently, Plaintiffs' Rule 15 motion to amend their complaint is granted.

### <u>*c.*     *Claims Against Tuffey, Personally*</u>

In order to establish a § 1983 claim against a government official in his individual capacity, a plaintiff need only "show that the official, acting under color of state law, caused the deprivation of a federal right."  <u>Hafer</u>, 502 U.S. at 25, 112 S.Ct. at 362 (<u>quoting</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985)).  The government official, for his part, may assert the personal immunity defense of qualified immunity.  <u>See</u> <u>id.</u>

A prerequisite to an award of damages on a § 1983 claim against an individual is personal involvement in the alleged constitutional deprivation.  <u>See</u> <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006) (<u>citing</u> <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir.1994) (<u>abrogated on other grounds</u>, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293 (1995))).  A plaintiff may establish the personal involvement of a defendant-supervisor by showing that he "(1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated."  <u>Iqbal</u> , 490 F.3d at 152-53 (2d Cir. 2007) (<u>citing</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir.1995)).

Plaintiffs, by their proposed amended complaint, allege that Tuffey created

the policies under which the Officers acted, and that he failed to remedy the alleged violations after being informed of them.  See Proposed Am. Compl. ¶¶ 57, 58, 79.  Accordingly, Plaintiffs have adequately alleged Tuffey's personal involvement, and therefore, Defendants' motion to dismiss the claims against Tuffey in his individual capacity is denied, and Plaintiffs' motion to amend their complaint in this regard is granted.

### 3.    *Illegal Seizure and Due Process Claim*

Regarding Plaintiff Constance Hines' illegal seizure and due process claim, Defendants argue in their moving papers that the issue of the legality of the seizure of Constance's vehicle is not ripe for resolution as it is more properly resolved at a forfeiture proceeding, which can not be held until criminal proceedings against Prince have concluded.  In addition, Defendants argue that they are not the proper defendants as they "do not currently, nor have they ever had, possession, control, or authority over the vehicle."  Defs.' Mem. of Law at 5, Dkt. No. 9.  At oral argument, counsel for Defendants noted that their ripeness argument has been rendered irrelevant by the fact that the vehicle has been returned to Constance.  However, Defendants continue to argue that they are not the proper defendants to this claim.

In opposition to Defendants' sole remaining argument for dismissal of this claim, Plaintiffs submit certain letters, discussed *supra*, which contradict Defendants' claim that they never had control or possession of Constance's vehicle, and which evidence that no forfeiture proceeding has been, or will be, held in order to determine the legality of the seizure.  In any event, Plaintiffs argue, Defendants' allegations of involvement by the New York State Attorney General do not appear in the complaint, and therefore, are improperly considered on a motion to dismiss.

17

In their papers, Defendants reply that the correspondence submitted by Plaintiffs is not properly considered on a motion to dismiss, as the contents of same are not referenced by the complaint.  Of course, it is clear that the allegations in Plaintiffs' proposed amended complaint reference the correspondence.  See Prposed Am. Compl. ¶ 79.  However, even assuming that no specific allegations regarding the correspondence appear in the complaint, because the letters are "documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit[,]" Muller-Paisner v. TIAA, 446 F.Supp.2d 221, 226-227 (S.D.N.Y. 2006), they are properly considered by this court in deciding Defendants' motion.

Regarding the merits of Constance's illegal seizure and due process claim, Plaintiffs cite caselaw in support of their argument that where, as here, a vehicle is seized without a warrant, a due process hearing must be afforded the owner. See Pls.' Mem. of Law at 11, Dkt. No. 14.  To begin with, "[t]he Supreme Court has held that the Fourth Amendment protects claimants against unreasonable seizure of their property in the civil forfeiture context." Krimstock v. Kelly, 306 F.3d 40, 49 (2d Cir. 2002) (citations omitted).  In addition, the Fourteenth Amendment is implicated when the government seizes property under a civil forfeiture statute in the absence of "a meaningful hearing at a meaningful time." Id. at 51(citations omitted).  The court in Krimstock went on to hold that "plaintiffs have a right under the Fourteenth Amendment to ask what "justification" the [municipality] has for retention of their vehicles during the pendency of proceedings . . . and to put that question to the [municipality] at an early point after seizure in order to minimize any arbitrary or mistaken encroachment upon plaintiffs' use and possession of their property." Id. at 53 (internal citations omitted).  Finally, the court in Krimstock ordered "that

18

claimants be given a prompt post-seizure retention hearing, with adequate notice, for motor vehicles seized as instrumentalities of crime pursuant to [New York City regulation]."  Id. at 68-69.

Here, Plaintiffs allege that Defendants seized Constance's vehicle without a warrant, retained possession of the vehicle for over one year despite repeated requests for its return, and failed to provide Constance with a hearing.  See Proposed Am. Compl. ¶¶ 27-31, 70-72.  While Plaintiffs have notified the court that Constance "has secured the release of her car from the Albany Police Department[,]" Marcelle Aff. ¶ 8, Dkt. No. 14, their complaint further seeks damages associated with Constance's loss of use of the vehicle during the time in question.  Accordingly, because the allegations in the complaint, both in its original form and as amended, state claims for violation of Constance Hines' Fourth and Fourteenth Amendment rights associated with the seizure of her vehicle, Defendants' motion to dismiss this claim is denied.

### 4.   *Unreasonable Search and Seizure Claim*

Defendants' sole argument for dismissal of Plaintiffs' unreasonable search and seizure claim against the Officers is that they are entitled to qualified immunity.[8]  The court will not expend much time considering Defendants' qualified immunity defense at this stage.  "[T]he Second Circuit has declared that while '[a] qualified immunity defense can be presented in a Rule 12(b)(6) motion ... the defense faces a formidable hurdle when advanced on such a motion....

---

[8] At oral argument, the court allowed Plaintiffs limited discovery in order to learn the identity of the Officers presently named John Doe 1 through 5.  See Dkt. No. 22.  After Plaintiffs filed their motion to amend the complaint, Defendants filed an answer to Plaintiffs' interrogatories identifying certain officers involved in the events underlying the claims in this action.  See Dkt. No. 31.  As of the writing of this Memorandum, Decision and Order, none of the officers have been served, nor have Plaintiffs sought further amendment of their complaint in order to identify John Doe 1 through 5.

Specifically, a traditional qualified immunity defense will succeed at this stage only if the facts supporting it appear on the face of the complaint.'" <u>Fleming v. State University of New York</u>, 502 F.Supp.2d 324, 340 (E.D.N.Y. 2007) (<u>quoting McKenna v. Wright</u>, 386 F.3d 432, 434, 436 (2d Cir.2004)).  Despite the fact that Defendants cite the standard for a qualified immunity defense to be decided on a motion for summary judgment, presently before the court is their Rule 12(b)(6) motion to dismiss.  <u>See</u> Defs.' Mem. of Law at 6.  Moreover, Defendants base their argument for qualified immunity on facts which do not appear on the face of the complaint.  For example, Defendants claim that Plaintiffs' constitutional rights were not violated, and even if they were, it was objectively reasonable for the Officers to hold Plaintiffs for six hours while they initially executed an arrest warrant for Prince and while they executed a search warrant for the premises.  <u>See</u> Defs.' Mem. of law at 6-7, Dkt. No. 9.  Nowhere in the complaint or the proposed amended complaint does it state that Defendants had a warrant to search the home or seize Plaintiffs or their property.  Because the court may not accept as true facts outside of the complaint when deciding a Rule 12(b)(6) motion, it may not grant such a motion on qualified immunity grounds, where same is based on facts outside of the complaint.  Therefore, Defendants' motion to dismiss is also denied as to Plaintiffs' illegal search and seizure claim against the Officers

## IV.   Conclusion

For the aforementioned reasons, it is hereby ORDERED that Plaintiffs' motion to amend their complaint (Dkt. No. 28) is GRANTED; and it is further

ORDERED that Defendants' motion to dismiss all causes of action against them for failure to state claims upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 9) is GRANTED insofar as all claims against defendants, the Albany Police Department and James W. Tuffey in his official

capacity as Albany Chief of Police are DISMISSED; and said motion is DENIED as to all claims against the remaining defendants, the City of Albany, James W. Tuffey in his individual capacity, and Officers John Doe 1 through 5; and it is further

ORDERED that Defendants shall file an answer to Plaintiffs' amended complaint on or before 30 days from the date of the filing of this Memorandum, Decision and Order.


IT IS SO ORDERED.

DATED:     February 8, 2008
           Syracuse, New York


_____
Neal P. McCurn
Senior  U.S. District Judge